Gaston, Judge,
 

 after stating the case as above, proceeded as follows: — The ground on which the plaintiff rests his claim to the aid of the court, is, that by his purchase at the execution sale, he acquired the estate of the late Hugh B, Knox, who by virtue of his purchase at the sale of the clerk and master, and of the payment of the purchase-money, was, in equity the owner of the land in dispute. If both these positions can be sustained, it is not easy to see why the plaintiff did not resist the recovery of Howcott and wife at law. The sale to him, if valid, is made so by our act of 1812, which passes to the purchaser not only the equitable interest of the
 
 cestui que trust,
 
 but
 
 *463
 
 the entire legal estate of the trustee.' But as this objection ° J has not been raised on the pleadings, and even had it been raised, the plaintiff might yet have been justified in asking for assistance in having his title established and .cleared from doubt, and as the injunction might be sustained as incidental to the main relief, we have not permitted ourselves to be arrested by it in the consideration of the case. Many objections were taken'in argument to the regularity of the proceedings under which the plaintiff purchased at the execution sale, some of which objections it would be difficult to get over, but we forbear from examining them, because, assuming that they are all unfounded, and that the plaintiff by that purchase acquired the estate of Hugh B. Knox, we are unable to see that Hugh B. Knox had any estate, or any right in equity to demand that conveyance or appointment, from the executors of Andrew Knox, which the plaintiff seeks as his assignee.
 

 The will of Andrew Knox contained no devise of the lega estate of the land in question, except to his wife for the term of her life; a naked power, wholly without an interest, was thereby granted to his executors, and the land descended to his children and heirs at law, subject to the estate for life, and liable to be divested, when the power so given should be validly executed. An appointment by the executors, pursuant to the power, would operate as the designation of a person to take under the will, and the ulterior legal estate would then pass to the appointee, as the devisee of the testator. It is perfectly clear that the executors cannot be compelled to do any act which is not warranted by the scope of the power confided to them. Their sole authority is derived from the testator; what he has empowered them to do, they may do; if they refuse, they may be compelled; if they have done it, but unconscientiously withhold the formal evidence of the act, it may be extorted from them. The question presents itself, have the executors sold the tract in question to Hugh B. Knox, conformably to the trust reposed in them ? If they have, he, and those who may represent him, have a right to demand such a deed as shall authenticate the sale, and complete the title to the land.
 

 
 *464
 
 Whether a power of sale, after ítenantfor life, can be fore that
 
 Butceiv^7
 
 tainiy it when the words “af-death,” ap-sde^ncT are not in-mere limi ¶ tatipn of for life!1*8
 

 It is a doubtful point upon the authorities, when there is a devise to one for life, and that after his decease the janc> gjjajj whether a sale can be made until after the decease of the tenant for life. However this may be, when an intent may be collected, that the testator did not
 
 J
 
 mean by the words, after the decease of the tenant for to an<^ PostPone the time of the sale, but only to mark the determination of his estate, '(see Hargrave’s note to Co. Lit. 113, and
 
 Vredale
 
 v.
 
 Vredale,
 
 3 Atk. 117,) we think that in this case, such an intent is repelled by the direction given with respect to the application of the proceeds of the sale. The testator, after the devise for life» expresses his wish that the land should be sold, and the proceeds divided among his four children, or the survivors of them. It is admitted by the counsel on both sides, and the pleadings proceed upon the understanding, that such is the legal interpretation of the will, (therefore ^ *s ^at ^ representatives of the deceased children are not brought before the court,) that by survivors are meant those living at the death of the tenant for life. The sale directed, is for the purpose of dividing among these children, the
 
 value
 
 of that which is itself unsusceptible of partition. If all these children had died before their mother, he unquestionably did not direct that a sale should then be made. The power was a trust to be called into action only for the benefit of the
 
 cestui que trusts.
 
 -If but one child had survived the tenant for life, the executors might well have hesitated, in undertaking to make a sale. The late case in the Court of Exchequer, in England, referred to by Mr. Sugden, in his Treatise on Powers, (first American, from the 3rd London edition, 273,) is a direct authority in point.
 

 If this difficulty could be removed, another presents itself, which in our opinion, is
 
 conclusive
 
 — the executors did not sell to Hugh B. Knox. We do not rely now on the forms with which the pretended sale was conducted, irregular and extraordinary as they were, but upon the fact that the alleged price was never paid to the executors, or to any person authorized to receive it. Whatever a court of equity, by virtue of its controlling and conser
 
 *465
 
 vative power over the interests of infants, may order in regard to the disposal or change of their property, it acted in no such character here. The infants were in no way before the court. Their rights were not represented; no decree was rendered, or could have been rendered, changing those rights; the petition was wholly an
 
 ex parte
 
 one, by the widow who held the life-estate, and the executors who had a power of sale under the will. The court could not enlarge, change or . modify that power, in any respect. The sale, whether made with or without the sanction of the court, could be rightfully made only by the executors. If they employed the clerk and master to set up the property at auction, the bidding might be regarded as one at their auction. If he received the money as their agent, for that purpose appointed, it would have been a receipt by them. But the whole character of the transaction shows that this was a pretended sale by the clerk asa judicial sale, and that the receipt of the money by him, was by colour of his authority as clerk. The certificate given to Knox, is signed by him as clerk and master, recites a sale made by him under a decree, and obliges him to make a deed whenever demanded. A report of the sale is made by him in his official character; and by an order of court he is compensated for his services in conducting the sale, as such. Had the sale been valid as a judicial sale, the clerk and master would not then have been authorized to receive the money, without an order of the court to collect it — and the purchaser wishing
 
 to
 
 pay, in such a case, before an .order to collect, can only save himself from hazard, by obtaining permission to pay it into court. No title can be made until the court authorizes it; and the court will not direct a conveyance before it ascertains that the money is effectually secured for all those who may thereafter become entitled to it. If the master,
 
 as master,
 
 could sell, the payment of the price to him, under these circumstances, unless the money afterwards reached the hands of those to whom it belonged, would not pass the equitable estate in the subject-matter of the purchase. Still less could it have that effect, when the master had no authority even to make the sale.
 

 
 *466
 
 The uncontested insolvency of an intestate does not entitle Ills administrator to costs.
 

 The case may be a hard one upon Hugh B. Knox, or on the plaintiff, who claims to have succeeded to his rights. Nothing appears to raise a suspicion that he did not act in good faith. But we cannot make a decree to divest the heirs of Andrew Knox of the inheritance which descended to them from their father, unless the sale has been made, which he authorized by his will. In equity, there is no sale, without payment of the purchase-money. By the misplaced confidence of the alleged purchaser, instead of this money having been paid to those who were interested to receive it, and secured to the intended objects of the testator’s bounty, one-half of it has been pocketed by the insolvent clerk, and the other half appropriated to the personal necessities of the insolvent widow. The injunction must be dissolved, and the bill dismissed with costs, as to the defendants, Howcott and wife: as to the other defendants, the bill is to be dismissed, but without costs. The executors have come before the court under very unfavourable circumstances. The misconduct of the widow deprives her estate of a right to remuneration for the expenses of this litigation ; and an administrator who relies upon the insolvency of his intestate, and where that insolvency is not contested, is not on that account entitled to costs in equity.
 
 Adair
 
 v.
 
 Shaw,
 
 1 Sch. & Lef.
 
 280. Vredale
 
 v.
 
 Vredale,
 
 3 Atk. 119.
 
 Humphrey
 
 v.
 
 Morse, 2
 
 Atk. 408.
 

 Per Curiam. Bill dismissed.